

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable Paul T. Holt
County Attorney, Travis County
Austin, Texas

Dear Sir:

Opinion No. O-2576
Re: Whether a candidate whose
name was not printed on the
ballot at the first primary
and who did not pay any part
of the expenses of such pri-
mary as provided by Article
3106, but who was one of the
two candidates receiving the
largest number of votes by
write-in, may have his name
printed on the ballot for
the second primary.

We have your request of July 30 for an opinion,
which reads:

"The County Democratic Executive Commit-
tee of Travis County, at its regular meeting
on June 17, 1940, passed a resolution provid-
ing for nominations for County and Precinct
candidates for office should be by a majority
vote; and said Committee also passed a resolu-
tion at said meeting providing that the name
of no candidate should be placed on the offi-
cial ballot in the primary elections to be held
by the Democratic Party of Travis County in the
year 1940, who had not filed his application
with the County Chairman and paid his assess-
ment as provided in Arts. 3113 and 3116, Revised
Statutes 1925.

"On the ballot voted on July 27, 1940, the
name of the only candidate who filed his appli-
cation with the County Chairman and paid the
assessment levied by the County Executive Com-
mittee appeared on the ballot. This candidate
failed to receive a majority of all the votes
cast. There were a number of write-in candidates

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

Hon. Paul T. Holt, page 2.

for the office and the question is now whether
the write-in candidate who received the highest
number of write-in votes is entitled to have his
name printed on the official ballot for the pri-
mary election to be held on August 24, 1940, and
I respectfully request a ruling from you as to
whether the highest write-in candidate is en-
titled to have his name printed on the official
ballot for the run-off primary to be held on
August 24, 1940."

It is clear from the facts set out in your letter
quoted above that it will be necessary to have a second pri-
mary election to select the democratic nominee for the office
in question, since (1) the Travis County Executive Committee
has provided by proper resolution, as contemplated by Article
3106, R. C. S., that nominations for county and precinct of-
ficers shall be by a majority vote, and (2) no candidate for
this office received a majority of the votes cast at the
first primary.

Article 3113, Revised Civil Statutes of Texas, 1925,
provides in part:

"Any person desiring his name to appear on
the official ballot for the general primary,
as a candidate for the nomination for any office
to be filled by the qualified voters of a county
or a portion thereof, or for county chairman,
shall file with the county chairman of the county of
his residence, not later than Saturday before the
third monday in June preceding such primary, a
written request for his name to be printed on such
official ballot . . ."

It is to be noted that this provision applies speci-
fically to the "general primary", and therefore is not con-
trolling as to the names which may be printed on the ballot
for the second primary, particularly when one or both of the
candidates receiving the highest number of votes at the first
primary were write-in candidates whose names were not printed
on the ballot for the general or first primary.

Article 3108, R. C. S., provides that the county
executive committee shall estimate the cost of holding the

Hon. Paul T. Holt, page 3.

primary elections and "shall apportion such cost among the
various candidates for nomination for county and precinct
offices. . ." to be paid by them "on or before the Saturday
before the fourth Monday in June. . ."

Article 3116, R. C. S., provides in part:

"No person's name shall be placed on the
ballot of a district, county, or precinct office
who has not paid to the county executive commit-
tee the amount of the estimated expense of hold-
ing such primary apportioned to him by the county
executive committee as hereinbefore provided."

The question presented in your request resolves
itself to a construction of the last above quoted statute,
i. e. whether a candidate who would otherwise be qualified
to have his name printed on the ballot for the second primary
by reason of having received one of the two highest number of
votes in the first primary is disqualified by reason of the
fact that he did not pay his proportionate share of the pri-
mary expenses "on or before the Saturday before the fourth
Monday in June".

It is significant to note that all of the above
quoted provisions of our present election statutes found their
statutory origin in but slightly different form in the so-
called Terrell election law being House Bill No. 8, Chapter
11, Acts of the First Called Session of the 29th Legislature,
1905, page 520 et seq. The first sentence of the present Ar-
ticle 3116 above quoted was originally enacted as the under-
scored portion of the following quotation from Section 111 of
the Terrell Election Law, in the form and context as follows:

". . . which subcommittee shall meet on the
second Monday in July and make up the official
ballot for SUCH GENERAL PRIMARY in such county,
in accordance with the certificates of the State
and district chairman, and the request filed with
the county chairman, and placing the name of
candidates for nomination for State, district,
county and precinct offices thereon in the order
determined by the county executive committee as
herein provided; provided that the name of no

Hon. Paul T. Holt, page 4.

> person shall be placed THEREON for a county
> or precinct office who has not paid to the
> county executive committee the amount of the
> estimated expenses of holding such primary
> apportioned to him by the county executive
> committee as hereinbefore provided." (capitals
> ours)

Special note should be given to the fact that the word "thereon" relates back to "such general primary". It is apparent, therefore, that Article 3116 as it now appears in our Statutes, originally referred only to the general primary and not to the second or run-off primary.

Did subsequent legislatures and codifiers by substituting for the word "thereon" as used in Section 111 of the Terrell Election Law the word "ballot", thereby intend to change the meaning of the statute so that it should refer to both the general and the second primary, whereas in its original enactment it referred only to the general primary? We think not.

It is likewise important to determine whether the phrase "hereinbefore provided," contained in both the above quoted provision of the Terrell Election Law and in Art. 3116, supra, relates to the payment of the proportionate part of the primary expenses by the candidate as provided by Article 3108, or whether it relates merely to the preceding phrase in the same sentence, "apportioned to him". The latter construction was adopted in a carefully reasoned opinion by Assistant Attorney General R. M. Rowland, addressed to Mr. W. R. McClelland, dated July 5, 1910. After quoting this identical provision from Section 111 of the Terrell Election Law, the opinion reads:

> "We think the phrase 'as hereinbefore pro-
> vided' has the word 'apportioned', for its ante-
> cedent, and not the word 'paid', and that the
> following rule laid down in 2 Lewis' Southerland
> on Statutory Construction, Sec. 420 applies:
> 'Relative and qualifying words and phrases,
> grammatically and legally, where no contrary in-
> tention appears, refer solely to the last ante-
> cedent.'"

Hon. Paul T. Holt, page 5


By this reference to the statutory history of Article 3116 and an analysis of its grammatical structure, we reach the conclusion that this Article may not properly be construed so as to preclude a candidate who has received the requisite number of votes in the first primary from having his name placed upon the ballot in the second primary by reason of the fact that he failed to pay his proportionate share of the primary expenses on or before the Saturday before the fourth Monday in June as required by Article 3108, R. C. S., as a prerequisite to have his name printed on the ballot for the first primary.

The conclusion arrived at by the foregoing analysis of the Statute is even more forcibly sustained by a consideration of the general purposes and public policy intended to be effectuated by our election laws as indicated by the following authorities. The fundamental purpose of all elections is to carry out the theory of Section 2 of Article 1 of the Bill of Rights of the Texas Constitution which provides:

"All political power is inherent in the people, and all free governments are founded on their authority, and instituted for their benefit. . ."

The purpose of our general and primary election laws is to guarantee and protect the exercise of the free choice of the people in the selection of the officials to govern them. In construing our election statutes we must ever bear in mind this underlying purpose and seek to effectuate it rather than restrict and trammel it by construction. As stated by Chief Justice Phillips in Gilmore vs. Waples, et al., 108 Tex. 167, p. 173,

"It is the undoubted right of a political party to make nominations for the elective officers of the people. The Legislature has the authority to prescribe reasonable methods to be employed for the purpose; but it does not possess the powers to absolutely prohibit any nomination being made. Such an attempt would constitute an arbitrary interference with the liberty of the people to freely associate themselves for the purpose of expressing such choice for their elective offices as they might select and for reasons they might see fit."

That votes cast for a candidate by writing in his name are of equal dignity with those for a candidate whose name was printed on the ballot at a general primary or general election cannot be doubted since the decision of the cases of Dunagan vs. Jones (Texarkana Ct. Civ. App. 1934), 76 S. W. (2d) 219, and Cunningham vs. McDermott, (El Paso Ct. Civ. App. 1925) 277 S. W. 218, writ of error refused.

In Dunnagan vs. Jones the agreed statement of facts stated in part:

"Mrs. Roy H. Dunnagan did not comply with any of the provisions of the primary election law required of candidates in said primary election law to enable them to have their names printed on the official ballot as candidates and did not pay any portion of the expenses of holding said election."

However, the court held that Mrs. Dunnagan, having received a majority of the valid votes cast at the general primary by write-in was duly nominated.

In Cunningham vs. McDermott, the unsuccessful candidate for the office of county and district clerk in the democratic primary, received a majority of the votes by write-in in the general election. In declaring the validity of the election of the write-in candidate at the general election, the court stated:

"It cannot be said that because a candidate's name did not appear on the official ballot that therefore he could not be legally elected, if he was otherwise not ineligible to hold the office to which he aspired, for to so hold would be, in effect to say that a citizen of this state who aspired to office must either help pay the expenses of some party primary or must, within thirty days after primary election day, deliver to the Secretary of State an application signed by the required percentage of qualified voters in his district who have not participated in any party primary."

Hon. Paul T. Holt, page 7


While write-in votes for candidates at the general or first primary election are valid as declared by the court in Cunningham vs. McDermott and Dunnagan vs. Jones, supra, such is not true of the run-off primary. The San Antonio Court of Civil Appeals in Cunningham against Queen, 96 S. W. (2d) 798 at p. 800, declared:

"Before a person is entitled to be voted for for an office in the run-off primary, he must have been one of the two high candidates at the first primary. If this were not true, it is very likely that neither candidate would receive a majority. If voters were left free to write in the name of any person they might choose in the run-off primary, there could very easily, and probably would, not be a majority for any candidate in the second primary, and thus the requirements of the law, that before a candidate can become a party nominee he must have received a majority of the votes, would prevent the party from making a nomination."

The rules laid down by the foregoing court decisions are in accordance with the former opinions of this department on the subject.

In a letter opinion dated August 19, 1932, addressed to Mr. Boly Tindel, written by Assistant Attorney General Gaynor Kendall, appearing at p. 860 of Vol. 337 of the Attorney General's Letter Opinions, it was stated:

". . . Since there is no statutory prohibition expressly inhibiting the practice, a voter in the general primary may scratch the name or names of candidates appearing on the official ballot for such primary, and may write in the name of another person, and that such ballot must be counted in returns made showing the votes cast for all candidates including those whose names were written in by the voters.

"Such is not the principle of the run-off primary. Since the purpose of such election is to prevent the making of a minority nomination there must be a limitation upon the choice of a voter or else the process of voting in the run-

Hon. Paul T. Holt, page 8

off primary would be an empty gesture, and the
result of the second election might easily be
practically the same as that of the first pri-
mary and the process might be carried to infinity
without arriving at a majority nomination."

In letter opinion addressed to Honorable Hugh L.
Small written by Assistant Attorney General Gaynor Kendall
on June 29, 1934, p. 440, Vol. 357, Attorney General's Letter
Opinions, the following question was propounded:

"If the voters write in a name for county
commissioner or other county official in the
July primary, who has not filed his application
according to law nor paid his fee, shall the
executive committee count and consider said vote?"

In answer to this question the opinion declared:

"In reply to the above you are advised that
this department has held several times that in
the first or general primary election it is per-
missible for voters to write in the name of a
person whose name does not appear on the official
ballot as a candidate for nomination for any
office, and who has not paid any assessments to
the county executive committee."

To the same effect is opinion written by First As-
sistant Attorney General Scott Gaines to Mr. W. L. Steed on
August 3, 1936, p. 978 of Vol. 372 of Attorney General's
Letter Opinions, which reads in part as follows:

". . . This department has held that voters
had the right to write the name of a person whose
name does not appear on the official ballot for
any given office and that such vote must be count-
ed and return made thereon. The department has
further held that such a person if he secured
enough votes to entitle his name to be placed on
the ballot for a run-off primary, would be entitled
to have his name printed on the official ballot
for such run-off primary, provided that such per-
son shall have complied with the requirement of
the statutes pertaining to the filing of expense
accounts as required by the statute."

Hon. Paul T. Holt, page 9


The precise question presented by your inquiry was before this department and answered by letter opinion written by Assistant Attorney General R. E. Gray to Honorable C. Burtt Potter, County Attorney, San Patricio County on June 23, 1938, p. 151 of Vol. 382 of the Attorney General's Letter Opinions. One of the questions presented in that opinion was:

"The second question is whether if a write-in candidate should be in the run-off, the committee is compelled to print his name on the ballot where he has not complied with the requirements for the primary as above mentioned and was not assessed as a result."

In answer to this question the opinion reads:

"In reply to your second question, the law prescribes that a county executive committee shall not place upon the ballot the name of any person having filed his name unless said candidates shall pay such fees as assessed by such committee. Therefore, if a person having his name written in on a ballot in the first primary, then before it should be accepted and placed on the ballot for the second primary election, the executive committee would have the right to assess him such fees as they deem to be reasonable or to assess such fees as prescribed by the law."

While the statutes fail to make express provision for the payment of fees by a candidate whose name appears on the official ballot for the first time in the second, or run-off primary, we believe that it is within the power and discretion of the county democratic executive committee to prescribe a reasonable fee to be paid by a candidate whose name is to be printed on the second primary ballot and who has not paid any fee prior to the first primary as prescribed by Article 3108, R. C. S. Mr. Justice Hawkins in Beene vs. Waples, 108 Tex. 140, 187 S. W. 191, declared:

"In the absence of constitutional or statutory restrictions upon their duties and powers, the duly existing authorities of a political party, such as state and county executive committees, in accordance with party usage, may make and enforce all reasonable regulations relating to

Hon. Paul T. Holt, page 10

nominations within such party, including reason-
able assessments against any and all candidates
for such nominations."

In accordance with the foregoing authorities, it
is our opinion that under the facts set forth in your letter,
the highest write-in candidate is entitled to have his name
printed on the official ballot for the run-off primary to
be held on August 24, 1940, and that the Travis County Demo-
cratic Executive Committee may require such candidate to pay
such reasonable fee as they may determine necessary to defray
his proportionate share of the expenses of conducting the
primary elections.

Yours very truly

ATTORNEY GENERAL OF TEXAS

APPROVED AUG 3, 1940

FIRST ASSISTANT
ATTORNEY GENERAL

By Walter R. Koch

Walter R. Koch
Assistant

WRK:jm

APPROVED AUG 3, 1940

ATTORNEY GENERAL OF TEXAS

APPROVED
OPINION
COMMITTEE
BY
CHAIRMAN